WALTER ACKER, JR., *Plaintiff in Error, v.* WILLOCK L. BELL, *Defendant in Error.*

Under the constitution and statutes of Florida a minor over the age of 18 years is bound by his enlistment into the military service of the State even though the consent of his parents was not obtained for such enlistment.

This case was decided by Division B.

Writ of error to the Circuit Court for Escambia County.

The facts in the case are stated in the opinion of the court.

*Emmet Wilson,* for Plaintiff in Error;

*Scott M. Loftin,* for Defendant in Error.

PARKHILL, J.—On the 2nd day of August, 1911, the defendant in error filed his petition for a writ of habeas corpus, seeking the discharge of Bryant Merritt Bell, the son of petitioner, from the custody of Walter Acker, Jr., as the commanding officer of Company "M," First Regiment of the National Guard of Florida. The discharge

of Bryant Merritt Bell was sought upon the ground that his enlistment as a private in said company was illegal and without authority of law, in that he enlisted, on the 1st day of June, 1911, when twenty years old, being then and now under the age of twenty-one years and without the consent and against the wishes of his father, and that his father is entitled to the custody of his said minor son.

The writ issued, and Acker, for return thereto, alleged that he is the captain commanding said Company. "M," First Regiment, Florida National Guard, and that he only requires said Bryant Merritt Bell to appear for regular and special drills of said company, and that otherwise he has not restrained the liberty of the said Bell. A motion to quash the return was sustained, and Bryant Merritt Bell was discharged from custody of said Acker. Thereupon a writ of error was sued out to this court.

Under the assignments of error and pleadings herein, the only question presented is, whether the consent in writing of parents or guardians of a minor, over the age of eighteen years, is necessary for the valid enlistment of such minor in the National Guard of Florida.

According to the provisions of Section 1 of Article XIV of the Constitution of 1885, of this State, "all able-bodied male inhabitants of this State, between the ages of Eighteen and forty-five years, that are citizens of the United States, or have declared their intention to become citizens thereof, shall constitute the militia of the State."

Section 670 of the General Statutes of 1906, of this State, provides: "That portion of the militia organized as a land force shall be known and designated as the National Guard of Florida, and shall be composed of able bodied volunteers between eighteen and forty-five years of age. Every applicant for enlistment shall furnish sat-

isfactory proof of good character, and shall, before taking the oath of enlistment, be subject to a physical examination conforming, as nearly as possible, to the requirements for enlistment in the United States Army."

Like unto the statute of this State is the Act of Congress Entitled "An Act to Promote Efficiency of the Militia, and for Other Purposes." 32 U. S. Stats. 775, as Amended by the Act of May 27, 1908, (35 U. S. Stats. 339), and as Amended by the Act of April 10, 1910 (36 U. S. Stats. 329), declaring, in Section 1:

"That the militia shall consist of every able-bodied male citizen of the respective States and Territories and the District of Columbia ————— who is more than eighteen and less than forty-five years of age, and shall be divided into two classes: The organized militia, to be known as the National Guard of the State, Territory or District of Columbia, or by such other designations as may be given them by the laws of the respective States or Territories, the remainder to be known as the reserved militia, etc."

"An enlistment," said MR. JUSTICE BREWER, in the case of In re Morrissey 137 U. S. 157, 11 Sup. Ct. Rep. 57, "is not a contract only, but effects a change of status. It is not, therefore, like an ordinary contract, voidable by the infant. At common law an enlistment was not voidable either by the infant or by his parents or guardians. The King v. The Inhabitants of Rotherford Greys, 2 Dow. & Ry. 628, text 634, S. C. 1 B & C 345, text 350; The King v. The Inhabitants of Lytchet Matraverse, 1 Man & Ry. 25 text, 31, S. C. 7 B & C 226, text 231; Commonwealth v. Gamble, 11 S & R (Pa) 93; United States v. Blakeney 3 Gratt. (Va) 405, text 411-413."

In United States v. Blakeney *supra*, BALDWIN, J., said: "Thus it will be seen that in England, neither the

common law nor the statute law protects minors from the effect of their contracts of enlistment; and no one has ever supposed that parents or guardians have the right to reclaim them from military service." He points out that the whole difficulty in the subject arises from the failure to discriminate between the public or national law and the municipal or domestic law. "It seems to me obvious," says he, "that the enlistment of a minor capable of bearing arms does not fall within the general rule of the municipal law, in regard to the incapacity of infants, under the age of twenty-one, to bind themselves by contract. Nor am I disposed to regard the enlistment as an exception to that rule. The rule, I think, has no application to the subject. The capacity of all citizens or subjects to bear arms to bind themselves to do so by voluntary enlistment, is in itself a high rule of the public law, to which the artificial rule of the municipal law forms no exception. The rule of the public law is subject to but two conditions, the ability of the party to carry arms, and his consent to do so; and these conditions may exist in as full force at the age of eighteen, as at the age of twenty-one.————————We know, as a matter of fact, that, at the age of eighteen, a man is capable intellectually and physically of bearing arms; and that it is the military age recognized by the whole legislation of Congress, and of the State of Virginia, and of all the States of the Union, perhaps without exception."

In The Commonwealth v. Gamble, 11 S & R (Pa) 93, GIBSON, C. J., put the case on the broad ground of public policy, which requires that a minor be at liberty to enter into a contract to serve the State, whenever such contract is not positively forbidden by the State itself, during which service parental authority over him is sus-

pended, though not annihilated. This, he said, is the common law of England.

It is competent for the Legislature to declare, by a new statute, a minor to be of full age and capable of acting for himself at eighteen instead of twenty-one years, and emancipate the child from the control of its parents. And so it seems clear that the statutes governing this case contemplate the military, not the civil, age of consent to obligatory engagements.

It will be observed that, by the statutes above quoted, no consent in writing or otherwise is required from parents or guardians, and no exception is given to minors who do not obtain such consent. As Congress and the legislature have authorized the minor, Bell, in this case to engage in the service of this State by enlisting in the militia or National Guard without requiring the previous consent of his parent to the contract of enlistment, and no contention being made that such contract has not been fairly made with an infant of reasonable discretion, his contract will be deemed to have a semblance of benefit to him, and to be essential to the public welfare and, therefore, binding to all intents and purposes upon him and his parent.

The enlistment of the minor, Bell, is not controlled by the provisions of Section 1117, of the Revised Statutes of the United States, which is as follows: "No person under the age of twenty-one years shall be enlisted or mustered into the military service of the *United States* without the written consent of his parents or guardian; provided that such minor has such parent or guardian entitled to his custody or control."

The minor, Bell, has not been enlisted in the military service of the United States. The provisions of Section 1117, of the Revised Statutes of the United States, are

not made applicable to the enlistment of Bell by the Act of Congress of May 27th, 1908, that "the organization, armament and discipline of the organized militia in the several States shall be the same as that which is now or may hereafter be prescribed for the regular army of the United States," and the provisions of Section 672, of the General Statutes, of 1906, of Florida, to the same effect. The word "organization," as used in said act, does not relate to or include the enlistment of a soldier. Organization relates to the distribution of the personnel of the army or militia, both *commissioned and enlisted,* into units. It provides for the distribution of the personnel into different arms and corps, such as infantry, cavalry, artillery, staff corps, medical corps, signal corps, etc., and the distribution of the personnel in each arm of the service corps into different units, such as divisions, brigades, companies, platoons, sections, squads, etc., and further into difference ranks or grades such as generals, colonels, lieutenant colonels, majors, captains, lieutenants, sergeants, corporals, privates, etc. Enlistment is the contract of service that a soldier, as distinguished from the officer, enters into with the State or the United States. The enlistment may be different in each State, some for seven years, some for five years, some for three years, with varying provisions for enlistment, and yet the *organization* of all may be the same; but it is essential to the effectiveness, and efficiency of the forces called into the national service that the organization thereof should be the same—one harmonious whole.

Neither are the provisions of Section 1117, of the Revised Statutes of the United States, made applicable to or controlling of the enlistment of Bell by the provision "that every officer and enlisted man of the militia who shall be called forth (by the President) shall be mustered

for service without further enlistment, and without further medical examination, etc." Sec. 5, Act of May 27th, 1908, 35 Stats. L. 399.

The provision that when called into service by the President no further enlistment is necessary simply does away with the delay necessary to the physical examination or other prerequisites of a similar nature to the enlistment of the soldier, and has no reference to the necessity of the consent of his parents or guardian. In the provision of Section 5, Chapter 204, quoted above, the words "mustered" and "enlistment" are both used. A soldier may be either enlisted or mustered into the military service of the United States. If a man be already enlisted in the National Guard of Florida, he may be called forth by the President without further enlistment, but he must be mustered into the service of the United States, but when he presents himself upon the call of the President to be mustered into the service of the United States, and it appears that the enlisted man is a minor and the consent of his parents or guardian has not been given thereto, he shall not be mustered by the provisions of Section 1117, of the Revised Statutes of the United States.

The enactment of Section 1117, of the Revised Statutes of the United States, requiring the consent of the parents or guardians of the minor to his enlistment, shows the necessity for just such a provision, and that when the duty to serve is by law placed upon minors over eighteen years of age, and they are allowed by law to enter into a contract of enlistment, and no right is reserved by the law specifically to the parents or guardians to object, then the right of the State to the services of such minors must be considered paramount to the control of the parents or guardians. And so we find that the Congress has

sometimes changed the law in reference to requiring the consent of the parents or guardians, leaving that provision or reservation out of the statute when the exigencies of war arose, and restoring it upon the return of peace.

If the minor, Bell, had been mustered into the service of the United States, either the volunteer or regular army thereof, or upon the call of the President, he would be clearly entitled to his discharge, as was done in the case of In re Burns, 87 Fed. Rep. 796. In that case, Malachi G. Burns, being nineteen years of age, enlisted in the Massachusetts Militia, as a private on May 4th, 1898. On May 9th, 1898, he was mustered into the service of the United States volunteer army, his parents not having consented thereto. The contention of counsel in the instant case that this conclusion would lead to the anomalous situation "of the parent of a minor being bound by his enlistment until the National Guard was called into the service of the United States, and then the parents or guardian could step in and secure the discharge of all minors who had not obtained the consent of their parents or guardian at a time above all others when it would be most embarrassing to the Government" is fully answered by District Judge LOWELL, in the case of In re Burns, *supra* as follows: "If it be said that this construction of the statutes, which permits the parents or guardians of a minor to prevent his enlistment in the active military forces of the United States, unduly hampers the National Government in the prosecution of the present war, it may be answered that the entire matter is within the control of Congress, which can require military service from any citizen of the United States, whatever his age, and without the consent of any one. If the Acts of 1864 and 1865, as amended by the Act of 1872, are unwise, they can be repealed or modified at once."

This young man, however, seeks his discharge from the National Guard of Florida. We think it clear, that by the statutes of this State and the United States, the militia, known as the National Guard of the State, consists of able-bodied male citizens or volunteers between eighteen and forty-five years of age, and that, so long as it is not sought to muster them into the service of the United States, the contract of enlistment of a minor is not voidable either by the infant or by his parents or guardians. In re Morrissey, 137 U. S. 157, 11 Sup. Ct. Rep. 57.

The legislation on this subject by the United States is simply this, that the militia known as the National Guard of the State consists of able-bodied male citizens, who are more than eighteen and less than forty-five years of age (32 U. S. Stats. 775), but when under the age of twenty-one years, they shall not be mustered into the military service of the United States, without the written consent of their parents or guardians. (Sec. 1117, U. S. Rev. Stats.) If this legislation is unwise, or if it unduly hampers the National Government, it may be repealed or modified, as Judge Lowell said in the case of In re Burns, *supra*.

It seems, however, that this legislation is founded on reason, and has been enacted with deliberation. There is reason for requiring the consent of parents or guardians for enlistment of a minor in the regular or volunteer army of the United States that does not exist when he enlists in the militia of his own State. In the service of the United States the minor is taken entirely away from parental control, from civil life and labor, and becomes solely a soldier for a protracted period of time, exposed to the hardships and dangers of actual service. In the militia, he remains at home, devoting practically all his time to civil occupations, and only doing military

service in his home State, under local officers and for short periods of time, and when the exigency calling him into active service passes, he returns to his home and · civil life at once.    Service in the militia is of a personal benefit to the minor, too, as it gives him the training that will fit him for service in the time of war, when the National Government may *force* him into its service, and he will be the better able to take care of himself and find it easier to become an officer and enjoy the privileges and opportunities attendant thereon.    In this way, too, the State is enabled to train its youth for military life at a time when the ability to learn and physical development is easiest.    The judgment discharging the minor, Bryant Merritt Bell, from custody is erroneous, and is hereby reversed.

TAYLOR and HOCKER, J. J., concur;

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL,. J. J., concur in the opinion.